IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CURTIS DAVIS,                          )
                    Petitioner,        )
                                       )
        vs.                            )   Civil Action No. 04-953
                                       )   Judge Joy Flowers Conti
JAMES L. GRACE,                        )   Magistrate Judge Lenihan
                    Respondent.        )

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.   RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

II.  REPORT

Petitioner, Curtis Davis, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, wherein he challenges his 1998 convictions for armed robbery and related charges.  In his Petition, he raises the following claims for relief.

1.   The trial court violated the Constitution's prohibition against double jeopardy by imposing consecutive sentences for each teller when the establishment suffered only the loss of moveable property.

2.   Ineffective assistance of counsel for failing to call Petitioner's co-defendant as a witness in spite of possessing an affidavit exonerating the Petitioner.

3.   Ineffective assistance of counsel for failing to preserve the issue on appeal.

4.  Denied any and all full or fair state evidentiary hearing on ineffective trial/direct appeal counsel claims.

5.  Trial court violated due process by failing to give cautionary Kloiber instruction to jury.

6.  Ineffective assistance of trial counsel by failing to request Kloiber instruction.

7.  Ineffective assistance of counsel for failing to inform the sentencing judge that Petitioner's alleged co-conspirator received a sentence of six to forty years.

8.  Petitioner was denied effective assistance of counsel on appeal because he was represented by the same public defenders office.

9.  Involuntariness of alleged confession.

10. Denied right to confront and examine Tolani Humphrey when prosecutor repeatedly inferred to jury that Humphrey had confessed to police and also involved Petitioner.

11. Prosecutorial misconduct by branding Petitioner a liar before the jury.

12. Ineffective assistance of counsel for failing to file a motion to exclude prior crimes.

13. Prosecutorial misconduct for referencing Petitioner's name from Detroit, other crimes and bad character witnesses.

A. <u>Relevant Facts and Procedural History</u>

The facts as found by the Trial Court are as follows.

On May 19, 1997, shortly before 10:00 A.M. in the Allentown Section of the City of Pittsburgh, Mr. Matthew Milko was sitting in his car at a red light when he observed two masked men get out of a Cadillac parked in front of the PNC Bank and enter the bank. One of the men was carrying a gun. To verify what he had seen, the witness turned his car into a gas station

lot and as he exited the station, he saw the two men come out of the bank, get into the Cadillac and pull out into traffic. One man was carrying a white plastic bag similar to a grocery bag. Each man had on what appeared to be a green shirt and black pants.

The witness decided to follow the car and did so until he lost sight of the car near the Port Authority transit lot. He decided to drive around the immediate area in case he could find the car or individuals. As he came down a street near the Port Authority lot fence, he saw two individuals walking along the sidewalk. One had on a green jacket and one had a white bag in his hand. At that point, the witness could see that the bag contained money which was protruding out of the bag. As the witness turned his van around, the two persons went into a nearby house. The witness noted the house and then returned to the bank where police had gathered.

The police took the witness back to the house where two men had been detained outside. The witness identified the defendant as one of the persons whom he had seen walking along the street carrying the white bag filled with money and dressed in clothes similar to those worn by the men at the bank. The defendant was arrested and later that day gave a statement wherein he described his participation in the bank robbery.

Tr. Ct. Op., 2/4/99, at pp. 2-3 (Commw. Ex. 6.) ( doc. no. 6).

Petitioner was arrested and charged with three counts of robbery and related charges. Through court-appointed counsel from the Office of the Public Defender, Defendant filed a pre-trial motion seeking suppression of his statement. On June 22, 1998, in the Court of Common Pleas of Allegheny County, the Honorable Donna Jo McDaniel held a hearing regarding defendant's pre-trial motion. At the close of the hearing, Judge McDaniel ruled defendant's pre-trial statement admissible, finding the testimony of the police officers more credible than that of

defendant.  Immediately thereafter, Petitioner was tried before a jury.  On June 24, 1998, he was convicted of three counts of robbery and one count of criminal conspiracy.  On September 1, 1998, Petitioner was sentenced to three consecutive sentences of not less than five nor more than ten years for each robbery offense; no further sentence was imposed for the conspiracy charge.

On October 1, 1998, through newly-appointed counsel from the Office of the Public Defender, Petitioner filed a Notice of Appeal to the Superior Court of Pennsylvania.  On January 19, 1999, Petitioner filed his Concise Statement of Matters Complained of on Appeal wherein he raised the following claims.

1. The Trial Court erred by failing to give a Kloiber instruction in regards to witness Milko's identification.

2. Counsel was ineffective for failing to request a Kloiber instruction in regards to witness Milko's identification.

3. The Trial Court violated due process by allowing multiple robbery convictions based on only one event.

4. Petitioner's sentences should have merged.

5. Petitioner's sentences were manifestly excessive.

6. Petitioner's sentence was disproportionate to co-defendant Tolani Humphrey's sentence.[1]

---

1. Commw. Ex. 3.

4

On February 8, 1999, Judge McDaniel filed her Opinion denying Petitioner's points on appeal and affirming his judgment of sentence.[2]   In his Brief filed on October 14, 1999, Petitioner raised the following claims.

1.   Trial counsel was ineffective for failing to present the testimony of co-defendant who provided a taped statement that he committed the robbery with another person but not with Mr. Davis.

2.   Defendant was entitled to a <u>Kloiber</u> instruction and counsel was ineffective for failing to request one.

3.   Petitioner's sentence was disproportionate to the six-year minimum sentence imposed on the gun-wielding co-defendant and was excessive in that only one institution was the subject of the theft; counsel was ineffective for failing to present the lower court with pertinent information and for failing to file post-sentence motions.[3]

On July 6, 2000, the Superior Court of Pennsylvania affirmed the judgment of the Court of Common Pleas in affirming Petitioner's judgment of sentence.[4]   Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on February 23, 2001.

On August 12, 2002, Petitioner, through appointed counsel, filed a Hybrid Amended Petition pursuant to the Pennsylvania Post

---

2.   Commw. Ex. 6.

3.   Commw. Ex. 5.

4.   Commw. Ex. 7.

Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. §§ 9541 et. seq., which raised the following claims.

1. Trial counsel was ineffective for failing to file a motion to modify sentence and appellate counsel was ineffective for failing to provide evidence officially documenting co-conspirator Tolani Humphrey's sentence, thereby waiving Defendant's appellate claims that his senence was manifestly excessive and unreasonable since it was disproportionate to Humphrey's sentence and that trial counsel was ineffective for failing to apprise Judge McDaniel of the disproportionality of sentence issue propr to the imposition of Defendant's sentence.

2. Trial counsel was ineffective for failing to subpoena co-conspirator Tolani Humphrey to testify at Defendant's trial so that counsel could question him about a taped statement that he gave exonerating Defendant of any involvement in the instant crmies, and for failing to introduce the tape itself into evidence. Appellate counsel was ineffective for failing to raise this issue on appeal, causing the Superior Court to find it waived.

3. The Allegheny County Public Defender's Office, Appellate Unit, was ineffective for failing to withdraw from the instant case and request that Judge McDaniel appoint counsel to represent Defendant in his appeal after the Appellate Unit discovered trial counsel's ineffectiveness in failing to introduce the audiotape and subpoena Humphrey at Defendant's trial.[5]

_____

5. Commw. Ex. 12.

On October 10, 2002, the PCRA Court dismissed Petitioner's PCRA Petition finding that all of the claims were without merit.[6] Through counsel, Petitioner filed a timely Notice of Appeal.  On April 9, 2003, Judge McDaniel filed her Opinion dismissing Petitioner's PCRA Petition.[7]  On July 12, 2002, Petitioner filed his Brief in the Superior Court wherein he raised the same issues he raised in his petition.[8]

On November 12, 2003, the Superior Court affirmed the judgment of the PCRA Court denying him post-conviction relief.[9] On April 6, 2004, the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal.  Petitioner filed his federal petition for writ of habeas corpus in this Court on July 23, 2004.

B. Exhaustion Requirement for Habeas Corpus Review

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral

---

6.   Commw. Ex. 15.

7.   Commw. Ex. 18.

8.   Commw. Ex. 19.

9.   Commw. Ex. 20.

review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied.  Orban v. Vaughn, 123 F.3d 727, 730 (3d Cir. 1997), *cert. denied*, 522 U.S. 1059 (1998).  The petitioner has the burden of establishing that exhaustion has been satisfied.  Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists.  Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995).[10]  A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise

---

10.  In addition, the amended Habeas Corpus Statute provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement.  28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).

his claims by any available state procedure.   28 U.S.C. §
2254(c).

## C. Procedural Default Doctrine

Beyond questions of exhaustion, a federal court may be
precluded from reviewing claims under the "procedural default
doctrine."  Gray v. Netherland, 518 U.S. 152 (1996); Coleman v.
Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678;
Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996).  Like the
exhaustion requirement, the procedural default doctrine was
developed to promote our dual judicial system.  It is based upon
the "independent and adequate state law grounds" doctrine, which
dictates that federal courts will not review a state court
decision involving a question of federal law if the state court
decision is based on state law that is "independent" of the
federal question and "adequate" to support the judgment.  Coleman
v. Thompson, 501 U.S. at 750.

A state's procedural rules are entitled to deference by
federal courts; a petitioner's violation of a state procedural
rule may constitute an independent and adequate state law ground
for denial of federal review of habeas claims under the
procedural default doctrine.  Id.; Sistrunk, 96 F.3d at 673.
Moreover, violations of a state's procedural rules may constitute
an independent and adequate state ground sufficient to invoke the
procedural default doctrine even where no state court explicitly

has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); Carter, 62 F.3d at 595. A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: 1) "cause" for the default *and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595.

It appears that Petitioner has presented the majority of his claims to the trial court through his direct appeal and PCRA proceedings although it is unclear whether he has presented all of his claims to the Superior Court of Pennsylvania and the Supreme Court of Pennsylvania. Notwithstanding, because it is clear that Petitioner has not demonstrated that he is entitled to federal habeas corpus relief with respect to any of his claims, this Court need not undertake the lengthy analysis of state law that would be required to determine the applicability of the procedural default doctrine with respect to his claims. *See* Lines v. Larkins, 208 F.3d 153, 165 (3d Cir. 2000) (noting that "federal courts should be most cautious before reaching a conclusion dependent upon an intricate analysis of state law that

10

a claim is procedurally barred"), *cert. denied*, 121 S.Ct. 785 (2001). Accordingly, this Court will review the Petitioner's claims under the authority granted in 28 U.S.C. § 2254(b)(2), which provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).

### D. <u>Standard of Review</u>

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations. 28 U.S.C. § 2254. Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state

court applied federal law correctly. *Id.* (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1982)).

A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), Justice O'Connor, writing the opinion of the Court for Part II, discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within section 2254(d)(1).

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 411-13. *See also* <u>Lockyer v. Andrade</u>, 538 U.S. 63 (2003).

The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. <u>Williams</u>, 529 U.S. at

409.  "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id*. at 411.  These standards apply to mixed questions of fact and law, such as whether trial counsel provided effective assistance of counsel.  <u>Werts v. Vaughn</u>, 228 F.3d 178, 204 (3d Cir. 2000), *cert. denied*, 121 S.Ct. 1621 (2001).  Finally, where the state court fails to adjudicate or address the merits of a petitioner's claims, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact.  <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001).

Petitioner's claims will be reviewed in accordance with the standard set forth above.  For ease of review, the Court has categorized similar claims together.

### E. <u>Double Jeopardy</u>

Petitioner first claims that the Double Jeopardy Clause was violated because he was convicted of three robberies with only one victim, the bank.  The Double Jeopardy Clause of the Fifth Amendment, applicable to the States through the Fourteenth

Amendment,[11] provides:  "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5.  The guarantee against double jeopardy consists of three separate constitutional protections:  1) it protects against a second prosecution for the same offense after acquittal; 2) it protects against a second prosecution for the same offense after conviction; and 3) it protects against multiple punishments for the same offense.  Stiver v. Meko, 130 F.3d 574 (3d Cir. 1997) (quoting United States v. Halper, 490 U.S. 435, 440 (1989)).  The case at bar concerns the third category regarding the prohibition against multiple punishments.

The seminal case describing the parameters of the Double Jeopardy Clause with respect to multiple punishments is Blockburger v. United States, 284 U.S. 299 (1932).

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304.  In Missouri v. Hunter, 459 U.S. 359, 366 (1983), the Supreme Court further clarified that the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.  Where a legislature specifically authorizes cumulative

---

11.  Benton v. Maryland, 395 U.S. 784 (1969).

14

punishment under two statutes, the trial court may impose cumulative punishment under such statutes in a single trial. *Id*. Moreover, in assessing whether a state legislature intended to prescribe cumulative punishments for a single, criminal incident, a federal court is bound by a state court's determination of the legislature's intent. *Id*. at 368.

Thus, there is no double jeopardy violation in the present case if the Pennsylvania legislature intended to allow defendants to be punished multiple times pursuant to the state's robbery statute when there are multiple victims. *See* <u>Commonwealth v. Frisbie</u>, 506 Pa. 461, 466, 485 A.2d 1098, 1100 (1984) (Pennsylvania Supreme Court held that in resolving an issue of whether a single act which injures multiple victims can be the basis for multiple sentences, the task of the court is to determine whether the legislature intended that each injury would be punished as a separate offense).

Petitioner was convicted of three counts of robbery as set forth in 18 Pa. Cons. Stat. § 3701, which provides as follows.

(a) Offense defined.--

(1) A person is guilty of robbery if, in the course of committing a theft, he:

(i) inflicts serious bodily injury upon another;

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;

15

>    (iii) commits or threatens immediately
> to commit any felony of the first or second
> degree;
>
>    (iv) inflicts bodily injury upon
> another or threatens another with or
> intentionally puts him in fear of immediate
> bodily injury; or
>
>    (v) physically takes or removes
> property from the person of another by force
> however slight.
>
> (2) An act shall be deemed "in the course of
> committing a theft" if it occurs in an
> attempt to commit theft or in flight after
> the attempt or commission.

18 Pa. Cons. Stat. § 3701.

The Pennsylvania courts long have held that, where separate crimes are committed against different individuals, a defendant is not placed in double jeopardy by being tried for each. Commonwealth v. Melissari, 298 Pa. 63, 148 A. 45 (1929); Commonwealth v. Valotta, 279 Pa. 84, 123 A. 681 (1924). Moreover, the Pennsylvania courts have held that, where a defendant robs a company and several individuals, indictments charging him with separate crimes against each victim do not subject him to double jeopardy, even though all robberies were part of same transaction. See, e.g., Commonwealth v. Lockhart, 223 Pa. Super. 60, 63, 296 A.2d 883, 884 (1972) ("[i]f five individuals are robbed in a room at gunpoint, five separate robberies have occurred since each victim was placed in apprehension by the acts of the assailant."); Com. ex rel.

16

*Lockhart v. Myers*, 165 A.2d 400, 193 Pa. Super. 531 (1960), *cert. denied*, 368 U.S. 860 (1961); *Com. ex rel. Spencer v. Banmiller*, 140 A.2d 860, 186 Pa. Super. 99 (holding that where defendant held up and robbed at gun point a number of employees of a certain company, although the robbery of two separate victims might have been successive steps in the same transaction, one did not necessarily involve the other, and therefore separate sentences were correctly imposed for two acts of robbery), *cert. denied*, 358 U.S. 889 (1958).

In Petitioner's case, the trial court made the following determination.

> The defendant was charged with three separate robberies and the facts support conviction on each. Specifically, witnesses testified that one masked person held a gun on the guard and made him lie on the floor while the other masked person jumped over the teller counter and took monies from two tellers. There was sufficient evidence to support the three convictions of robbery and the law provides for a sentence on each since they are not greater and lesser included offenses.

Tr. Ct. Op., p.4 (Commw. Ex. 6).

As stated above, the Pennsylvania legislature intended to allow for multiple convictions in a factual circumstance like that presented in the instant case. Thus, Petitioner's convictions of three counts of robbery with respect to the three separate victims did not violate his right against being

17

subjected to double jeopardy and his first claim is without merit.

## F. Kloiber Instruction

Next, Petitioner asserts trial court error for failure to give a "Kloiber" instruction to the jury. As an initial matter, it is noted that jury instructions typically are matters of state law. Thus, before a federal court may grant federal habeas corpus relief with respect to jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even universally condemned, but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment. Estelle v. McGuire, 502 U.S. 62, 72 (1991) ("The only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.") (quoting Cupp v. Naughten, 414 U.S. 141, 147 (1973)). In weighing the prejudice from an allegedly improper charge, the instruction may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. Estelle, 502 U.S. 72; Flamer v. Delaware, 68 F.3d 736, 736 (3d Cir. 1995), *cert. denied*, 464 U.S. 865 (1996). Furthermore, a petitioner raising the omission of an instruction as error has a heavy burden because an omission, or an incomplete instruction, is less likely

to be prejudicial than a misstatement of the law.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

Moreover, a determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that an error has occurred.  If an error is found, the court also must determine that the error had a substantial and injurious effect or influence in determining the jury's verdict before granting relief in habeas proceedings.

Petitioner's habeas claim is that he was entitled to a Kloiber instruction.  In Commonwealth v. Kloiber, 378 Pa. 412, 424- 25, 106 A.2d 820, 826-27, *cert. denied*, 348 U.S. 875 (1954), the Supreme Court of Pennsylvania made the following determination with respect to identification testimony.

> Where the opportunity for positive identification is good and the witness is positive in his identification and his identification is not weakened by prior failure to identify, but remains, even after cross-examination, positive and unqualified, the testimony as to identification need not be received with caution--indeed the cases say that "his [positive] testimony as to identity may be treated as the statement of a fact."
>
>                 . . .
>
> On the other hand, where the witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identity are weakened by qualification or by

19

> failure to identify defendant on one or more
> prior occasions, the accuracy of the
> identification is so doubtful that the Court
> should warn the jury that the testimony as
> to identity must be received with caution.

Kloiber, 378 Pa. at 424, 106 A.2d at 826-27 (citations omitted).

The Pennsylvania courts have interpreted Kloiber as requiring a

cautionary jury instruction where the eyewitness: 1) did not

have an opportunity to clearly view the defendant; 2) equivocated

on the identification of the defendant; or 3) had a problem

making an identification in the past. See Commonwealth v.

Gibson, 547 Pa. 71, 93, 688 A.2d 1152, 1163 (1997).

Petitioner asserts that a Kloiber instruction was required

because witness Milko, who followed the bank robbers and

identified Petitioner during trial, failed to identify him during

a pre-trial police line-up. In reviewing this claim, the

Superior Court held as follows.

> We examine the record to determine whether the
> jury should have been warned pursuant to Kloiber.
> Here, witness Milko testified that, on the day of the
> crime, he positively identified Appellant at the house
> when he returned with police. Milko also positively
> identified Appellant during the trial. Although Milko
> was not able to positively identify anyone in the
> police line-up several weeks before trial, he did state
> that Appellant looked familiar to him and asked for a
> second look; however, Milko was not given a second
> opportunity to view the line-up.
>
> The record also reflects that witness Milko had
> other opportunities to clearly observe the Appellant.
> Milko testified that he watched the two black males,
> who were wearing ski masks, exit a black Cadillac and
> enter the bank. One of the men had a gun in his hand.
> Milko then observed the two men exit the bank, jump

20

into the Cadillac and drive away.  Milko testified that
the men were wearing green shirts and black pants and
one was carrying a white grocery bag.  Milko followed
the Cadillac but eventually lost sight of the vehicle.
He continued to drive around looking for the car and
eventually saw two unmasked males, who fit the
description of the men he saw exit the bank, walking
down the street.  One man was wearing a green jacket
and the other was carrying a plastic bag.  Milko
testified that he saw money protruding from the bag.
Milko watched the men enter a house and noted the
location.  Milko returned to the bank and the police
took him back to the house where he positively
identified Appellant and co-conspirator.  At trial,
Milko made a positive in court identification of
Appellant.

On review of the record, Milko had ample
opportunity to observe Appellant on several occasions.
He made unequivocal on-the-scene and in-court
identifications of Appellant.  The trial court was not,
therefore, required to instruct the jury to view
witness Milko's in-court identification of Appellant
with caution.  This issue lacks merit.

Sup. Ct. Op., pp. 4-5 (Commw. Ex. 7).

While the Due Process Clause precludes a jury from
convicting a defendant on the basis of unreliable identification
evidence, Manson v. Brathwaite, 432 U.S. 98 (1977), an
identifying witness need not be free from doubt.  United States
v. Wilford, 493 F.2d 730, 732 n. 4 (3d Cir.), cert. denied, 419
U.S. 851 (1974).  Moreover, this Court has not discovered any
Constitutional law or federal law that requires a trial court to
provide any cautionary jury instruction concerning witness
identification testimony.  See United States v. Barber, 442 F.2d
517, 526 (3d Cir. 1971) ("[I]t is necessary neither to instruct
the jury that they should receive certain identification

21

testimony with caution, nor to suggest to them the inherent unreliability of certain eye-witness identification."), *cert. denied sub nom.*, <u>Mowbray v. United States</u>, 404 U.S. 846 (1972). Thus, it appears that Petitioner's jury instruction claim implicates only state law issues and does not provide any basis for federal habeas corpus relief.

Moreover, the record before this Court supports the Superior Court's determination that Petitioner suffered no prejudice from the lack of the requested jury instruction. Specifically, Petitioner gave a statement to the police in which he confessed to his participation in the robberies. In this situation, there is no basis for giving a <u>Kloiber</u> instruction. *Accord* <u>Johnson v. Vaughn</u>, 38 Fed. Appx. 717, 719 (3d Cir.), *cert. denied*, 537 U.S. 835 (2002).

Petitioner has not demonstrated that the Pennsylvania courts made an objectively unreasonable determination in failing to give a <u>Kloiber</u> jury instruction. Nor has he demonstrated that the lack of the requested cautionary jury instruction so infused his trial with unfairness as to render his conviction a violation of due process. *See* <u>Calderon v. Coleman</u>, 525 U.S. 141 (1998) (holding that a federal court may grant habeas relief based on an erroneous jury instruction only when such error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict). Accordingly,

Petitioner is not entitled to federal habeas corpus relief on this claim.

## G. Involuntariness of Confession

Petitioner asserts that PCRA counsel abandoned his claim that his confession was involuntary and, therefore, should have been excluded. There are two constitutional bases for the requirement that a confession be voluntary to be admitted into evidence: the Fifth Amendment right against self-incrimination and the Due Process Clause of the Fourteenth Amendment. Dickerson v. United States, 530 U.S. 428, 433 (2000). In Miranda v. Arizona, 384 U.S. 436, 467 (1966), the Supreme Court determined that custodial police interrogation inherently involved "compelled" testimony for purposes of the Fifth Amendment. To combat this inherent compulsion, the Supreme Court imposed an obligation on the police to follow certain procedures when dealing with persons accused of criminal conduct. These procedures, referred to as "Miranda" warnings, require the police, *prior* to the initiation of questioning, to inform the accused of the right to remain silent, the right to have an attorney present, that the accused is suspected of involvement in criminal activity and that any statement made by the accused may be used by the police as evidence against him. *Id*. at 468-470. Beyond this duty to inform, the Miranda rule requires the police to respect an accused's decision to exercise the rights protected

by the Miranda warnings.  Thus, the police are required to cease interrogation if the accused indicates that he wishes to remain silent or if he states that he wants an attorney.  *Id*. at 473-474.  Failure to honor such a request results in suppression of statements made by an accused after he has made such a request. Oregon v. Elstad, 470 U.S. 298, 307 (1985) (the failure to administer Miranda warnings creates an irrebuttable presumption of compulsion that prohibits the prosecution from using such statements in its case in chief, even with respect to statements that are otherwise voluntary within the meaning of the Fifth Amendment).

Miranda warnings are required only with respect to custodial interrogation.  Statements obtained through non-custodial interrogation do not require suppression under Miranda.  Absent official coercion, the Fifth Amendment privilege is not violated, even by the most inculpatory admissions.  *See* Colorado v. Connelly, 479 U.S. 157, 163 (1986) (holding that coercive police activity is a necessary predicate to a finding that a confession is not "voluntary" within the meaning of the Due Process Clause). Thus, a court will not hold that a confession was involuntary unless it finds that it was the product of "police overreaching." *Id.*

In determining whether a confession was voluntary, a court must determine whether the confession was "the product of an

24

essentially free and unconstrained choice by its maker," that it was "the product of a rational intellect and a free will" and that the appellant's will was not "overborne." United States v. Swint, 15 F.3d 286, 289 (3d Cir. 1994) (internal quotations and citations omitted).  Courts look to the totality of circumstances to determine whether a confession was voluntary, including:  the length of the interrogation; its location; its continuity; the defendant's maturity; physical condition; and mental health. Id. (citations omitted).  The Court should consider all of these factors to determine whether the circumstances show that the conduct of law enforcement officials was such as to overbear the defendant's will to resist. Rogers v. Richmond, 365 U.S. 534, 544 (1961).

Here, Petitioner denied making any statements to police confessing his involvement in the crimes.  Thus, there was no basis upon which to raise any issue regarding the voluntariness of his confession.  Moreover, during the suppression hearing, Detective John Klaczak testified that Petitioner was given his Miranda rights and voluntarily gave a statement after his co-conspirator told him that they had been caught "red-handed."  In response, Petitioner denied making any statements.  The trial court determined that it was issue of credibility and resolved it in favor of the Commonwealth and denied the motion for suppression.  T.T.36.  In this regard, the Court's ruling

25

impliedly held that there was no credible evidence of coercion or threats on the part of the authorities and there was no credible evidence that the defendant asked to talk to an attorney prior to giving his statement.   These implicit factual findings are entitled to a presumption of correctness that Petitioner can overcome only by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).   As Petitioner has not submitted any evidence to overcome the courts' factual determinations, he is not entitled to habeas relief with respect to this claim.

### H. Right to Confront Witnesses

In his tenth claim, Petitioner asserts that he was denied the right to confront and examine Tolani Humphrey when the prosecutor repeatedly inferred to the jury that Humphrey had confessed to the police the involvement of Petitioner.   The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to be present during all stages of a criminal proceeding where witnesses will provide testimony.   Specifically, the Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...."  U.S. Const. VI. The Confrontation Clause ensures a criminal defendant an opportunity for effective cross-examination for the purpose of promoting reliability in a criminal trial.   Kentucky v. Stincer, 482 U.S. 730, 739 (1987).   Moreover, the Confrontation Clause of

the Sixth Amendment forbids the admission of a non-testifying co-defendant's facially incriminating confession in a joint trial, even where the jury has been given a limiting instruction. Bruton v. United States, 391 U.S. 123 (1968).

Here, Petitioner's confrontation rights were not violated for several reasons. First, Humphrey was not a co-defendant; he was a co-conspirator who was tried in a separate trial. Second, no statements made by Humphrey were introduced at Petitioner's trial. Thus, Petitioner had no right to confront and examine him. Consequently, this claim is without merit.

## I. Prosecutorial Misconduct

Petitioner raises two claims of prosecutorial misconduct. Allegations of prosecutorial misconduct are reviewed under the standards for fundamental fairness as guaranteed under the Due Process Clause. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Smith v. Phillips, 455 U.S. 209, 219 (1982). To constitute a due process violation, the prosecutorial misconduct must be " 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " United States v. Bagley, 473 U.S. 667, 676 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108 (1976)). The relevant question is whether the prosecutors' comments so infected the trial with unfairness so as to make the resulting conviction a denial of due process. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). In making

27

this determination, the statements or conduct at issue cannot be viewed in isolation.  Rather, a court must assess the strength of the evidence against the defendant and decide whether the prosecutor's statements plausibly could have tipped the scales in favor of the prosecution.  United States v. Young, 470 U.S. 1, 11 (1985).  In other words, "the court must consider the probable effect the prosecutor's [statements] would have on the jury's ability to judge the evidence fairly."  Id.  Moreover, a prosecutor's statement regarding the credibility of a witness can constitute grounds for reversal only if the defendant can show that he was prejudiced by those comments.  United States v. Swinehart, 617 F.2d 336, 339 (3d Cir. 1980).  A determinative factor in this analysis is whether the prosecutor's comments suggested that he or she had knowledge of evidence other than that which was presented to the jury.  Buehl v. Vaughn, 166 F.3d 163, 176 (3d Cir. 1999) (citations omitted).

Petitioner first claims prosecutorial misconduct when the Prosecutor made the following remarks during his closing argument.

> The defense lawyer brought up the part about the fact that the defendant had either been adjudicated delinquent or was found guilty of several theft-related offenses.  And the reason for that, and the Judge will tell you this is the law, that you are allowed to consider those crimes for one purpose.  And the purpose is the idea that people who do these may be liars. You're allowed to consider that, that a person you know who has either been adjudicated delinquent or found

28

guilty of theft crimes may be a liar.  He may be a liar
here on the stand. . . .

T.T. p. 235.

In Pennsylvania, evidence of prior convictions can be
introduced for the purpose of impeaching the credibility of a
witness if the conviction was for an offense involving dishonesty
or false statement, and the date of conviction or the last day of
confinement is within ten years of the trial date.  If a period
greater than ten years has expired the presiding judge must
determine whether the value of the evidence substantially
outweighs its prejudicial effect.  Commonwealth v. Randall, 515
Pa. 410, 415, 528 A.2d 1326, 1329 (1987).  Under this standard,
Petitioner's prior convictions in 1992 and 1995 for receiving
stolen goods and unauthorized use, which occurred less than ten
years prior to trial, clearly were admissible.  Consequently,
there was no prosecutorial misconduct.

Petitioner's second claim of prosecutorial misconduct stems
from the reference to Detroit made by the Prosecutor during his
questioning of Petitioner during trial.  Specifically, the
Prosecutor asked Petitioner if he heard the officer say that
Petitioner was from Detroit.  Petitioner responded that his
Mother's family was from Detroit and he had put that information
in a bond form.  He further stated that his residence was in
Pittsburgh and that the officers knew that because of when he
sold crack on the street.  T.T. pp. 204-205.  These comments did

29

not so infect the trial with unfairness so as to make the resulting conviction a denial of due process.   In other words, Petitioner has failed to demonstrate how the prosecutor's statements, viewed in light of all of the testimony, could have affected the fundamental ability of the jury to weigh the evidence fairly.   Accordingly, he is not entitled to habeas corpus relief as to this claim.

### J.  Ineffective Assistance of Counsel

Petitioner's remaining claims assert ineffective assistance of counsel.   The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (*quoting* Strickland v. Washington, 466 U.S. 668, 684 (1984)).

> Thus the right to the effective assistance
> of counsel is recognized not for its own
> sake, but because of the effect it has on
> the ability of the accused to receive a fair
> trial.   Absent some effect of challenged
> conduct on the reliability of the trial
> process, the Sixth Amendment guarantee is
> generally not implicated.

Fretwell, 506 U.S. at 369 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).  *See also* Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective assistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense.  _Strickland_, 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct.  _Strickland_, 466 U.S. at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof.  _Cronic_, 466 U.S. at 658.

The first prong of the _Strickland_ test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment.  _Strickland_, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy."  _Id_. at 689.  The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place.  _Id_.

31

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. <u>Strickland</u>, 466 U.S. at 689. To prove prejudice, a defendant must show that there is a reasonable probability that, <u>but for</u> counsel's unprofessional errors, the result of the proceeding would have been different. <u>Strickland</u>, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. *Id*. Petitioner's claims will be reviewed under the preceding analysis.

    a.  <u>failure to call witnesses</u>

Petitioner's first claims ineffective assistance of trial counsel for failing to call Petitioner's co-defendant as a witness in spite of possessing an affidavit exonerating the Petitioner. In reviewing this claim, the Superior Court found as follows.

> Appellant next argues that the PCRA court erred by failing to hold an evidentiary hearing to consider trial counsel's failure to subpoena co-conspirator Humphrey to testify at trial. Apparently, shortly after the robbery, Humphrey gave a taped statement to an attorney representing appellant that he (Humphrey) committed the crime and appellant was not involved. Appellant now argues that Humphrey should have been called as a witness on appellant's behalf and, further, that the tape should have been offered as evidence.

> To establish ineffectiveness for failing to call a witness, a defendant must prove, in addition to the other ineffectiveness criteria, (1) the existence and availability of the witness; (2) counsel's awareness of, or duty to know of, the witness; (3) the witness's

willingness and ability to cooperate and appear on the defendant's behalf; and (4) how the absence of the witness's testimony prejudiced the defendant. <u>Commonwealth v. Wharton</u>, 571 Pa. [85], 811 A.2d 978 (2002). In <u>Commonwealth v. Brown</u>, 767 A.2d 576 (Pa. Super. 2001) we held that this documentation need not be in the form of an affidavit, but must be in the form of a signed certification. **See also** Pa.R.Crim.P. 1502.

Appellant has offered no affidavit or certification from Humphrey setting out his willingness to testify and the substance of that testimony. On this ground alone appellant is not entitled to relief from his claim. **Brown, supra**. Further, appellant could not have compelled Humphrey to testify on appellant's behalf as Humphrey would have had to have admitted to the crime in order to benefit appellant. Humphrey, of course, had a Fifth Amendment right to decline to testify at all. In addition, Humphrey had already testified at his own trial that he did *not* commit the crime. And, at Humphrey's trial, the court admitted Humphrey's confession to the crime, which confession *inculpated* appellant. Finally, at the time of appellant's trial, Humphrey was challenging his guilt on appeal.

Appellant argues that even without Humphrey's testimony, the tape should have been offered as substantive evidence of appellant's innocence. But the tape was hearsay and while it might have been admissible as a prior inconsistent statement had Humphrey testified to the contrary, it simply would not have been admissible without Humphrey's testimony. **Commonwealth v. Carmody**, 799 A.2d 143 (Pa. Super. 2003) (prior inconsistent statement admissible as impeachment and as substantive evidence, if made under reliable circumstances and offered on cross-examination). As appellant has not established that Humphrey would have testified, and there is little likelihood Humphrey would have testified, there was no error by the PCRA court in denying appellant's request for relief without a hearing.

Sup.Ct.Op., pp. 4-6 (Commw. Ex. 20).

Petitioner has failed to show that the Pennsylvania Superior Court's determination of this claim is contrary to, or an

33

unreasonable application of, constitutional law as set forth by the United States Supreme Court.  Nor could he do so on the basis of this record as the test utilized by the Pennsylvania State Courts for determining ineffectiveness based on failure to call a witness is the same test used by the Federal Courts.  *See, e.g.*, Armstead v. Colleran, 2003 WL 22436232, (E.D. Pa., Oct. 24, 2003) ("To prove that counsel was ineffective for failing to call a witness, then, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner of a fair trial.") (citing in support Blasi v. Attorney General of the Commonwealth of Pennsylvania, 120 F.Supp.2d 451, 474 (M.D. Pa. 2000), *aff'd*, 275 F.3d 33 (3d Cir.2001), *cert. denied*, 122 S.Ct. 1540 (2002)); Fithian v. Shannon, 2002 WL 1636004, *4 (E.D. Pa. July 23, 2002) (finding that the Superior Court's application of the test of ineffectiveness for failure to call a witness was "neither contrary to nor an unreasonable application of federal law").  Petitioner has not argued, and the record would not support an argument, that the State Court's disposition of this issue involved an unreasonable determination of the facts.  Accordingly, this issue does not merit Petitioner relief.

34

Moreover, Petitioner has failed to demonstrate how he was prejudiced by his counsel's failure to have presented Humphrey as a witness. First, Humphrey's detailed confession of the robbery, including Petitioner's participation would have been elicited on cross-examination. Second, Petitioner's own confession contradicts Humphrey's proposed testimony. In short, Petitioner has not demonstrated any reasonable probability that the factfinder would have reached a different conclusion had trial counsel called Humphrey to testify. As such, Petitioner has not shown that he is entitled to federal habeas corpus relief with respect to this claim.

b.   <u>failure to request a Kloiber instruction</u>

Petitioner argues that his trial counsel was ineffective for failing to request a <u>Kloiber</u> instruction. As discussed above, the Pennsylvania courts determined that Petitioner was not entitled to a <u>Kloiber</u> instruction. Consequently, the Pennsylvania courts held that trial counsel could not be found ineffective for failure to raise a meritless claim. Sup.Ct.Op., p. 6 (Commw. Ex. 7). This determination is not contrary to, or an unreasonable application of, federal or constitutional law. *See* <u>Parrish v. Fulcomer</u>, 150 F.3d 326, 328 (3d Cir. 1998) (holding that counsel was not ineffective for failing to raise meritless claims).

35

c.   <u>failing to inform trial judge of co-conspirator's</u>
<u>sentence</u>

Petitioner further claims that his trial counsel rendered
ineffective assistance by failing to inform the sentencing judge
that Humphrey received a sentence of six to forty years, thus
resulting in him receiving a disproportionate sentence of fifteen
to thirty years.  In its review of this claim, the Pennsylvania
courts noted that, under Pennsylvania law, an alleged disparity
between a defendant's sentence and a co-defendant's sentence
raises a substantial question as to the propriety of the sentence
only when both are sentenced by the same judge.  Sup. Ct. Op. p.8
(Commw. Ex. 7).   However, when co-conspirators are tried
separately by different judges, a claim of disparate sentencing,
in and of itself, is not a sufficient ground to merit
resentencing.

In refusing to grant Petitioner relief, the Superior Court
noted that Petitioner and Humphrey were tried and sentenced
separately by different judges at different times.  Moreover, as
noted by the Superior Court, the trial court properly considered
relevant factors in fashioning Petitioner's sentence, including
his pre-sentence report detailing his prior convictions,
violations of the terms of his probation and parole sentences,
the fact that Petitioner committed the robbery while he was
sentenced to alternative housing in ARC house, and a letter from
the Allegheny County Jail outlining Petitioner's disciplinary

problems.  Sup. Ct. Op. at p. 11 (Commw. Ex. 7).  As there was no basis upon which to raise the discrepancy in sentence claim, counsel cannot have been ineffective for failing to have raised it.  Consequently, Petitioner is not entitled to relief on this basis.

> d.   failure to file motion seeking to exclude prior crimes evidence

Petitioner further argues that his trial counsel was ineffective for failing to file a motion to exclude prior crimes.  As stated above, however, evidence of prior convictions can be introduced for the purpose of impeaching the credibility of a witness if the conviction was for an offense involving dishonesty or false statement, and the date of conviction or the last day of confinement is within ten years of the trial date.  Under this standard, Petitioner's prior convictions in 1992 and 1995 for receiving stolen goods and unauthorized use clearly were admissible.  Consequently, trial counsel was not ineffective for failing to file a motion to exclude prior crimes when they clearly were admissible in Petitioner's trial.

> e.   representation by same public defender's office

Petitioner next claims that he was denied effective assistance of counsel on appeal because he was represented by the same public defenders office.  In ruling on this claim, the Pennsylvania courts noted that, ordinarily, a public defender cannot argue the ineffectiveness of another member of the same

public defender's office. Notwithstanding, unless it is clear from the record that counsel was ineffective, new counsel will not be appointed. Sup. Ct. Op. at p. 7 (Commw. Ex. 7). Because all of Petitioner's trial court ineffectiveness claims were deemed to be without merit, the Pennsylvania courts determined that Petitioner was not entitled to relief on this claim because he could not show he suffered any prejudice from being represented by the same office during trial and on appeal. This determination is not contrary to, or an unreasonable application of, clearly established federal or constitutional law. Consequently, Petitioner is not entitled to relief on this claim.

       f.   <u>failure to preserve ineffectiveness claims on appeal</u>

Petitioner also asserts ineffective assistance of appellate counsel for failing to preserve trial counsel ineffectiveness issues on appeal. Again, as all trial counsel ineffectiveness claims were deemed to be without merit, appellate counsel cannot be deemed ineffective for failing to preserve them on appeal.[12]

       g.   <u>denial of hearing</u>

Petitioner's final claim is that he was denied any and all full or fair state evidentiary hearing on his ineffective trial/direct appeal counsel claims. First, Petitioner is not

---

12. Moreover, Petitioner cannot show prejudice because he was able to bring his appellate counsel ineffectiveness claims in his PCRA proceeding.

entitled to federal habeas relief with respect to this claim as he has no constitutional right to a hearing with respect to ineffective assistance of counsel claims.   Second, to the extent that Petitioner is invoking the Due Process Clause of the Fourteenth Amendment, he has not demonstrated any fundamental unfairness in his proceedings where none of his ineffective assistance of counsel claims were of any merit.   Consequently, he is not entitled to federal habeas corpus relief with respect to this claim.

### K. Certificate of Appealability

The Antiterrorism Act included several major reforms to the federal habeas corpus laws.  Section 102 of the Antiterrorism Act (28 U.S.C. § 2253(c) (as amended)) codifies standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."

Petitioner has not made any showing that he was denied any of his constitutional rights.   Accordingly, a certificate of appealability should be denied.

### III. **CONCLUSION**

For the foregoing reasons, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights

                              Lisa Pupo Lenihan
                              U.S. Magistrate Judge

Dated: October 24, 2005

cc:  Joy Flowers Conti
     United States District Judge

     Curtis Davis, DT-7757
     SCI Huntingdon
     1100 Pike Street
     Huntingdon, PA 16654-1112

     Margaret K. Barker
     Assistant District Attorney
     Office of the District Attorney
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219